UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KENNETH N. WYNDER, JR.,

        Plaintiff,

-against-

ROBERT LINN[1]; STEVEN BANKS; RENEE CAMPION; MARJORIE LANDA; MARYANNE MULLANY; NEW YORK CITY OFFICE OF LABOR RELATIONS; OFFICE OF THE NEW YORK CITY COMPTROLLER'S OFFICE,

        Defendants.

25-CV-2961 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

    Plaintiff, a *pro se* federal prisoner, brings this action under 42 U.S.C. § 1983, alleging that Defendants – New York City officials and two New York City agencies, the Office of Labor Relations ("OLR") and the Comptroller's Office – acted under color of state law to "devise[ ] and implement[ ] a scheme to harm and defame Plaintiff," "denying [him] due process" by "unlawfully accus[ing] Plaintiff of theft of New York City contributions" to the Law Enforcement Employees Benevolent Association ("LEEBA") while he was president of that union.[2] (ECF 1, ¶¶ 2, 61.) Plaintiff asserts that "Defendants' intentional civil-conspiracy scheme" denied him the right to a fair trial, thereby "caus[ing][his] incarc[e]ration," as well as "pain and

---

[1] In the case caption and various paragraphs in the complaint, Plaintiff has misspelled the last name of the Commissioner of the New York City Office of Labor Relations as "Lin." The correct spelling is "Linn," which is also used by Plaintiff in certain allegations. The Court uses the proper spelling in this order. The Court otherwise quotes the complaint verbatim. All spelling, grammar, and punctuation are as in the original complaint unless otherwise noted.

[2] Although assigned to FCI Lexington in Lexington, Kentucky, Plaintiff's current address of record indicates that he may be housed temporarily at Fort Worth Medical Center, in Fort Worth, Texas, to receive medical care.

suffering, economic loss and loss of employment." (*Id.* ¶ 61.) By order dated June 16, 2025, the court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[3] For the following reasons, the Court dismisses the complaint.

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475, has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

---

[3] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

The Supreme Court has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

Court records show that Plaintiff Kenneth N. Wynder, Jr. is in federal prison serving a forty-month sentence following his conviction on charges of fraud, embezzlement, and corruption during his term as president and trustee of LEEBA, a labor union based in Manhattan.[4] *See United States v. Wynder, Jr.,* No. 1:20-CR-00470-1 (PKC) (S.D.N.Y. Jan.19, 2024). On May 30, 2023, following a five-day jury trial, Wynder and co-defendant Andrew Brown, LEEBA's former financial advisor, were convicted of all counts charged in the superseding indictment. Both were convicted of wire fraud and conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349, and Wynder was also convicted of tax evasion and conspiracy to commit tax evasion, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 371. On

---

[4] According to the record in Plaintiff's criminal case, LEEBA is a labor union that acted as the collective bargaining representative for law enforcement personnel of various New York City agencies and entered into agreements on behalf of those employees, including agreements for insurance and retirement benefits.

January 17, 2024, Judge P. Kevin Castel sentenced Wynder to 40 months' imprisonment, to be followed by three years' supervised release; and he was also ordered to pay $529,000 in forfeiture and $838,683.62 in restitution. *See* ECF 1:20-CR-470, 255.

On January 24, 2024, Plaintiff filed an appeal of his conviction in the United States Court of Appeals for the Second Circuit. *See United States v. Wynder Jr.*, No. 24-213-CR (2d Cir. Aug. 7, 2025). On August 7, 2025, the Court of Appeals affirmed Plaintiff's conviction. *Id.*

In this complaint, Plaintiff asserts that Defendants employed "unlawful means" in schemes to "harm and defame him in an effort to remove [him] from his position as President of [LEEBA] and create a loss of contractual benefits and monetary damages to Plaintiff's members to force them to turn on [him]." (ECF 1, ¶ 2.) Plaintiff alleges that each of the Defendants – New York City officials and the New York City OLR and Comptroller's Office – engaged in an "intentional civil-conspiracy [that] caused Plaintiff incarc[e]ration, pain and suffering, economic loss and loss of employment." (*Id.* ¶ 61.)

Plaintiff alleges that in late 2016, Defendant Marjorie Mullany, Assistant Director of Financial Audits for the New York City Comptroller's Office, sent a letter to LEEBA, informing Plaintiff, as LEEBA's president, that the LEEBA union had been delinquent in making its 2014 and 2015 Directive 12 filings.[5] (*Id.* ¶ 22.) In August of 2017, the Comptroller's Office performed an audit of LEEBA's 2014 Directive 12 report. (*Id.* ¶¶ 26-27.) After two weeks of meeting with Mullany and her audit team, Plaintiff was informed that the audit would be expanded to include

---

[5] In New York City, Directive 12, titled, "Employee Benefit Funds – Uniform Reporting and Auditing Requirements," establishes "accounting, auditing, and financial guidelines" for such benefit funds. Under Directive 12, a benefits fund that receives City contributions must submit a report to the Comptroller's Office, outlining the fund's financial status and operations during the previous fiscal year; and the report must be filed within nine months of the fund's fiscal year-end. *See* www.comptroller.nyc.gov/wp-content/uploads/2014/12/Directive12-Non-MLC_UnionEmployeeBenefitFunds.pdf (last viewed Sept. 30, 2025).

4

the 2015 Directive 12 report. (*Id.* ¶ 28.) From that date until September 2017, there was a series of interactions between the Comptroller's Office and Plaintiff related to the Office's investigation of LEEBA's financial records. The Comptrollers' Office requested documents, such as LEEBA's bank accounts, invoices for members' claims, and service contracts for attorneys, but Plaintiff claimed such records did not exist. (*Id.* ¶¶ 29-30.) Then, after repeatedly requesting that LEEBA provide its 2016 Directive 12 filing, Defendant Steven Banks, First Deputy Commissioner and General Counsel of the New York City OLR, sent a letter to LEEBA in September 2017, informing LEEBA that "if it doesn't submit the 2016 Directive 12 filings, its Welfare and Annuity Funds will stop and be placed into Escrow." (*Id.* ¶¶ 4, 32.) On September 25, 2017, Defendant Renee Campion, First Deputy Commissioner of the New York City OLR, followed up with a letter that informed Plaintiff that the welfare and annuity funds had indeed been stopped and placed in escrow "because LEEBA had breached its contractual agreement with OLR." (*Id.* ¶¶ 5, 34.)

Plaintiff further alleges that, in October 2018, defendant Marjorie Landa, Director of Financial Audit for the New York City Comptroller's Office, requested that Mullany issue a subpoena against LEEBA to gain the "same documents [Mullany] ha[d] in the past been asking for"; but Mullany, Landa, and the Comptroller's Office decided "not to accept Plaintiff's answers to [the] Subpoena and filed [c]ontempt [c]harges against Plaintiff in December of 2018." (*Id.* ¶¶ 38-39.) Plaintiff alleges that, in February 2019, a judge found in his favor with respect to contempt as to the documents sought. (*Id.* ¶ 40.)

In March 2019, Plaintiff sent a letter to Defendants Banks and Campion to explain that LEEBA's 2016 Directive 12 report would be delayed, but that a rough draft "would be sent the

5

next day." (*Id.*¶ 43.)[6] Plaintiff requested that LEEBA funds be released in the interim, but that request was denied. (*Id.*)

Between March and June of 2019, Landa reached out to a former co-worker, Federal Bureau of Investigation ("F.B.I.") Agent Joseph Duome. (*Id.* ¶ 44.) She met with him at the Comptroller's Office and set up an interview between Defendant Mullany and Duome. (*Id.*)

On July 3, 2019, Mullany attempted to "harm, defame, and destroy Plaintiff" by giving "false statements" to the F.B.I. in a meeting with Agent Duome. (*Id.* ¶ 45.) Specifically, Mullany failed to properly "instruct and be truthful" when she spoke with Duome regarding the implementation of policies under Directive 12 and the application of those policies to all unions in New York City. (*Id.* ¶ 45.) In that manner, Mullany attempted to "make Plaintiff look like he was facilitating criminal activity of theft." (*Id.* ¶ 46.) After Mullany's interview with Agent Duome, he led the F.B.I. in raiding Plaintiff's LEEBA office; and the following week, *The Chief* newspaper, which is "dedicated to reporting and covering news and labor" relations between the City of New York and labor unions, stated that the raid had been initiated by the OLR and the Comptroller's Office. (*Id.* ¶¶ 48-49.)

In January of 2020, LEEBA members received a letter from Defendant Robert Linn, Commissioner of the New York City OLR, informing them that the OLR would provide prescription medication coverage under a "rider" to supplement their medical plans. (*Id.* ¶ 53.) Plaintiff characterizes Linn's statement as "false" because it does not state that "it was law that OLR had to provide coverage." (*Id.*) By May of 2020, LEEBA members still allegedly lacked their contractual benefits that had been negotiated with OLR, so Defendant Campion wrote to

---

[6] In his complaint, Plaintiff has included two consecutive paragraphs numbered "43." This cite references the second such paragraph.

LEEBA members on behalf of the New York City OLR to inform them that their dental, vision, and life insurance could be "re-activated by paying their previous benefit vendors." (*Id.* ¶ 54.)

Ultimately, Plaintiff was indicted in this court for wire fraud, tax evasion, and conspiracy to commit those crimes. *See* ECF 1:20-CR-00470, 6 (Indictment, Sept. 8, 2020); ECF 1:20-CR-0470, 44 (Superseding Indictment, July 22, 2021). During Plaintiff's jury trial, on May 23 and 24, 2023, Plaintiff alleges that Defendant Mullany gave false testimony before Judge Castel of this court. Plaintiff alleges that, among other false statements, Mullany denied that the Comptroller's Office had the opportunity to complete the LEEBA audit. (ECF 1, ¶ 60 (1-8).) Instead, Plaintiff avers, Mullany repeatedly sought documents that she was told did not exist. (*Id.* ¶ 60 (2).)

Plaintiff concludes that the Defendants worked together "in a concerted effort" to use their "lawful positions" to carry out a "civil conspiracy" to deny Plaintiff "due process" by accusing him of "theft of New York City contributions" to LEEBA. (*Id.* ¶ 61.) For example, they "engaged in a public promotion of letters to [P]laintiff's [union] members" that "contain[ed] false statements to harm [and] defame [him] and [to] turn members against [Plaintiff] and LEEBA." (*Id.*) Such actions were designed to "prevent the growth of his minority-based union of [l]aw [e]nforcement officers." (*Id.*) Defendant Mullany also gave false testimony to the F.B.I. and at Plaintiff's trial. (*Id.*) All of Defendants' actions resulted in his "incarc[e]ration, pain and suffering, economic loss and loss of employment." (*Id.*)

As relief, Plaintiff seeks a declaration that Defendants' actions "violated [his] rights" and compensatory damages, including "pain and suffering," in an amount no "less than [$]50,000,000." (*Id.* ¶¶ 62-63.)

## DISCUSSION

The Court construes the complaint as asserting federal constitutional claims, under 42 U.S.C. § 1983, of conspiracy, malicious prosecution, and fabrication of evidence. To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

### A.     City-Agency Defendants and the City of New York

Plaintiff asserts claims against two New York City agencies, the Office of Labor Relations ("OLR") and the Comptroller's Office. Agencies of the City of New York, including those named as Defendants in this action, are not entities that can be sued. *See* N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter*." (emphasis in original)); *see also Emerson v. City of New York,* 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."); *Sexton v. Dep't of Homeless Servs.*, No. 1:24-CV-8895 (DEH), 2025 WL 1334605, at *3-4 (S.D.N.Y. May 7, 2025) (dismissing claims against agencies of the City of New York, including the Comptroller's Office, as entities that cannot be sued under the New York City Charter ch. 17, § 396). The Court therefore dismisses Plaintiff's claims against New York City OLR and Comptroller's Office for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

To the extent the complaint can be liberally construed as attempting to assert claims against the City of New York, those claims must also be dismissed. When a plaintiff sues a

municipality under Section 1983, it is insufficient to allege that one of the municipality's employees or agents engaged in wrongdoing. Rather, the plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (emphasis in original)); *Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of right or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)). Specifically, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal or other local government entity policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." (emphasis in original)).

Here, Plaintiff alleges no facts suggesting that the City of New York has a policy, practice, or custom that caused a violation of his federal constitutional rights. The Court therefore dismisses any claims Plaintiff may be attempting to assert against the City of New York for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

9

Plaintiff also attempts to assert claims against the individual City of New York employees in their official capacities. (*See* ECF 1, at 3-4.) "[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself." *Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("There is no longer a need to bring official-capacity actions against local government officials . . . [because] local government units can be sued directly for damages and injunctive or declaratory relief."). The Court therefore dismisses Plaintiff's claims against the City of New York officials in their official capacities for the same reasons as it dismissed his claims against the City of New York. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B.  Individual capacity claims**

Plaintiff alleges that individual defendants Lin, Banks, Campion, Landa, and Mullany made false statements about him and engaged in a conspiracy that resulted in his prosecution and his conviction on federal charges. The Court construes Plaintiff's allegations as asserting claims for conspiracy to violate his constitutional rights, fabrication of evidence, and malicious prosecution. He seeks money damages and declaratory relief.

Plaintiff's claims against these defendants are barred by the Supreme Court's decision in *Heck v. Humphrey*, 513 U.S. 477 (1994).

In *Heck*, the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted) (emphasis in original); The *Heck* bar applies even when a Section 1983 plaintiff is actively challenging his conviction. *See Corley v. Vance*, 365 F. Supp. 3d 407, 440 (S.D.N.Y. 2019) (Failla, J.) ("[N]either Plaintiff's pending motions, nor his eventual release, has any effect on the applicability of *Heck*."), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020); *Magnotta v. Putnam Cnty. Sheriff*, No. 13-CV-2752, 2014 WL 705281, at *5 (S.D.N.Y. Feb. 24, 2014) (Gorenstein, M.J.), *adopted* ECF 1:13-CV-2752, 88 (Apr. 17, 2014) ("Nor does the fact that [plaintiff] is actively appealing his criminal conviction . . . lift the *Heck* bar inasmuch as the plaintiff in *Heck* itself was also pursuing an appeal of his criminal conviction at the time he brought his § 1983 claims." (citation omitted)).

Here, Plaintiff alleges that Defendants engaged in a conspiracy by undertaking unlawful audits of LEEBA's Directive 12 filings to make it look like he fraudulently embezzled that union's funds. Specifically, Plaintiff claims that Defendants "unlawfully accused [him] of theft of New York City contributions" to LEEBA, which ultimately "caused Plaintiff['s] incarc[e]ration." (ECF1, ¶ 61.) He further alleges that Defendants provided false statements to federal agents and at trial in order to secure Plaintiff's conviction. (*Id.*) Plaintiff's success on these claims would necessarily render his conviction invalid. *See Warren v. Fischl*, 674 F. App'x 71, 73 (2d Cir. 2017) (summary order) (affirming district court's ruling that *Heck* barred appellant's claims – "that the defendants [Nassau County public officials, including district attorneys and police officers] conspired to fabricate evidence and testimony against him and introduced such fabricated evidence and perjury at trial" – because "if proved, [these claims] would demonstrate the invalidity of his conviction"); *Channer v. Mitchell*, 43 F.3d 786, 787 (2d Cir. 1994) (per curiam) (affirming dismissal under *Heck* of Section 1983 claims alleging that police officers "committed numerous acts of perjury and coerced witnesses to wrongfully

11

identify [plaintiff]," and noting that "these allegations, if proven, would have rendered [plaintiff's] conviction invalid").

*Heck* therefore bars Plaintiff's claims for money damages and declaratory relief. Before seeking relief under Section 1983, Plaintiff is required to prove "that the conviction or sentence has been reversed on direct appeal" or otherwise invalidated. *Heck*, 512 U.S. at 487. Plaintiff's conviction has been upheld on appeal and has not been otherwise invalidated. The Court therefore dismisses Plaintiff's claims against the individual defendants, without prejudice, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

This dismissal is without prejudice to any relief he may seek through the appellate process or through a motion under 28 U.S.C. § 2255. *See McDonough v. Smith*, 588 U.S. 109, 114 (2019) ("The statute of limitations for a fabricated-evidence claim . . . does not begin to run until the criminal proceedings against the defendant (i.e., the § 1983 plaintiff) have terminated in his favor."); *Heck*, 512 U.S. at 489 ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor.").

**C.     Claims under State Law**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which

district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**D.     Leave to Amend is Denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because Plaintiff's conviction has not been overturned or invalidated, the defects in Plaintiff's complaint cannot be cured with an amendment, and the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses the complaint, filed IFP under 28 U.S.C. § 1915(a)(1), for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff's claims against Linn, Banks, Campion, Landa, and Mullany are dismissed without prejudice.

The Court declines to exercise supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See* 28 U.S.C. § 1367(c)(3).

The Court directs the Clerk of Court to enter judgment dismissing this action.

SO ORDERED.

Dated:   October 9, 2025
         New York, New York

                                                          _Louis L. Stanton_
                                                          Louis L. Stanton
                                                          U.S.D.J.